**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

United States of America,

Petitioner,

v.

Phillip LeClair,

Respondent.

**MEMORANDUM OPINION AND ORDER**
Civil No. 01-2327 ADM/AJB

---

Joan D. Humes, Esq., Assistant U.S. Attorney, on behalf of Petitioner.

Virginia G. Villa, Esq., Assistant Federal Public Defender, on behalf of Respondent.

---

## I. INTRODUCTION

This matter is before the undersigned United States District Judge pursuant to Respondent Phillip LeClair's Objections [Doc. No. 10] to the January 8, 2002, Report and Recommedation ("R&R") of Magistrate Judge Arthur J. Boylan [Doc. No. 6]. In the R&R, Judge Boylan recommends that the United States' petition pursuant to 18 U.S.C. § 4246 be granted and that LeClair be committed to the custody of the Attorney General for continued hospitalization and treatment until suitable state placement may be found, or until his release no longer constitutes a substantial risk of bodily injury to another person or serious damage to the property of another. R&R, at 4. For the reasons set forth below, the R&R is adopted.

## II. BACKGROUND

In July, 2000, LeClair was arrested and charged with Felony Assault and Battery with a Dangerous Weapon after hitting an appliance repairman on the head with an axe or a log splitter, with no apparent provocation. *See* Gov't. Hr'g. Exs. 2, 4, 8. The victim suffered a 35% partial

FILED MAY 28 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD MAY 28 2002
DEPUTY CLERK

permanent disability as a result. On September 25, 2000, the United States District Court for the Western District of Oklahoma found LeClair incompetent to stand trial and ordered him committed for treatment and evaluation. On August 29, 2001, the United States District Court for the Western District of Oklahoma found that LeClair remained incompetent to stand trial and ordered him committed for a determination of whether he is mentally ill and would present a substantial risk upon release, under 18 U.S.C. § 4246.

On March 5, 2002, a hearing was held at the Federal Medical Center in Rochester, Minnesota to determine the mental condition of LeClair and whether he poses a substantial risk of bodily injury to another person or risk of serious damage to the property of another. Dr. Daniel Carlson, a Clinical Psychologist at FMC-Rochester, testified that LeClair is suffering from mental illness, specifically undifferentiated schizophrenia, alcohol and inhalant dependence and borderline intellectual functioning. Dr. Carlson testified that LeClair demonstrates the following symptoms: paranoid, somatic and grandiose delusions; thought disorders; auditory hallucinations and extreme social isolation. Dr. Carlson evaluated LeClair's prognosis for recovery as very poor. The expert opinion of Dr. Carlson is that LeClair's release would pose a substantial risk of harm and that LeClair's mental illness creates the substantial risk. Dr. Carlson opined that the only suitable placement for LeClair would be an inpatient mental health hospital.

Although LeClair testified as a fact witness on his own behalf, he presented no adverse expert opinion testimony. Pam Young, a social worker, testified that she had unsuccessfully attempted to find suitable state inpatient placement for LeClair in Oklahoma.

In the R&R, Judge Boylan found that the United States proved by clear and convincing

evidence that LeClair presently suffers from a mental disease or defect. R&R, at 3. Judge Boylan also found that the United States proved by clear and convincing evidence that LeClair's release would create a substantial risk of bodily injury to another person or risk of serious damage to the property of another, and that LeClair's mental illness causes the substantial risk of harm. Finally, Judge Boylan found that the United States proved by clear and convincing evidence that no suitable arrangement for state custody is available.

## III. DISCUSSION

A district court must make an independent, *de novo* evaluation of those portions of an R&R to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. *See* 28 U.S.C. § 636(b)(1)(C); D. Minn. LR 72.1(c)(2).

In his Objection, LeClair contends there has been no clear and convincing proof that he hit a repairman on the head with an axe without provocation. LeClair argues that the R&R assumes he committed this assault and battery, but that the government has not proven by clear and convincing evidence he did it. LeClair concludes the government failed to meet its burden of proof.

The United States responds that since his arrest in July, 2000, LeClair has never denied hitting the repairman on the head with an axe in any proceeding. The report of Andrew Willey, the BIA Criminal Investigator, describes the assault in detail, and this report was received at the hearing over no objection by LeClair. Gov't. Hr'g. Ex. 7. Also received without objection was a letter from the victim describing his permanent disabilities as a consequence of the attack.

Gov't. Hr'g. Ex. 8.

The United States offered appropriate expert testimony to demonstrate by clear and convincing evidence that LeClair's release would pose a substantial risk of harm. One of the grounds for Dr. Carlson's expert opinion was the underlying incident of LeClair striking a repairman with an axe without provocation. The facts or data that form the bases for an expert opinion "need not be admissible in evidence" in order for the expert opinion to be admitted so long as the evidence is a type reasonably relied upon by experts in the field. Fed. R. Evid. 703. Dr. Carlson testified that he regularly relies on facts in a patient's file to form the basis of his opinion and that such facts are reasonable to rely on. Thus, his expert opinion is admissible.

Dr. Carlson testified that LeClair's undisputed, long history of alcohol and inhalant abuse is a historical predictor of potential dangerousness.

Moreover, Dr. Carlson observed LeClair's clinical predictors of dangerousness. Specifically, Dr. Carlson identified LeClair's extreme paranoia and grandiose delusions, including LeClair's beliefs that he had been attacked by helicopters, was being monitored by television, was a general in the Army, participated in 105 wars, had direct contacts with the Attorney General, suffered gunshot injuries in a variety of wars, and was shot in the head by the officers who arrested him after the axe incident. LeClair demonstrates little insight into his mental illness and need for treatment. Dr. Carlson opined that the combination of LeClair's paranoia, delusions, and severely impaired judgment increases the risk of LeClair acting on one of his beliefs, at a substantial risk of harm to others. The R&R is adopted.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

(1) LeClair's Objections to the R&R [Doc. No. 10] are **DENIED**;

(2) Judge Boylan's R&R [Doc. No. 6] is **ADOPTED**; and

(3) The United States' petition pursuant to 18 U.S.C. § 4246 is **GRANTED**, and LeClair shall be committed to the custody of the Attorney General for continued hospitalization and treatment until suitable state placement may be found, or until his release no longer constitutes a substantial risk of bodily injury to another person or serious damage to the property of another.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Dated: May 28, 2002